IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | No. 07 CR 858 |
| v. ) | |
| ) | Judge John J. Tharp, Jr. |
| JON A. DARMSTADTER ) | |

**ORDER**

For the reasons set forth in the Statement below, the Government's motion to correct clerical errors in the amended judgment order [140] is granted, and the Government's application for writ of execution [124] is denied. Enter Amended Judgment Order.

**STATEMENT**

In March 2010, Defendant Jon Darmstadter pled guilty to two offenses under Title 26: tax evasion (26 U.S.C. § 7201) and false statements (26 U.S.C. § 7206). The sentencing judge sentenced him to five years imprisonment followed by two years of supervised released. The judge also ordered Mr. Darmstadter to pay $2,365,594 in restitution. Am. J. 3, ECF No. 92. As of the filing of the Government's application, however, Mr. Darmstadter had only paid about $30,000 of that total. The Government now applies for a writ of execution pursuant to 18 U.S.C. § 3613 and 28 U.S.C. §§ 3202–03 to collect the outstanding balance.

The Government's application alleges that Mr. Darmstadter is the sole owner, shareholder, officer, and employee of five companies and has used these companies to finance an extravagant lifestyle despite reporting little monthly income from which to pay his restitution debt. Both Mr. Darmstadter (by invoking his Fifth Amendment privilege) and the companies have refused to provide information regarding the source of Mr. Darmstadter's supposed wealth.[1] Yet any interests Mr. Darmstadter has in these companies, the Government says, is subject to a restitution lien. Therefore, appointment of a receiver is warranted in order to seize control the companies, ascertain Mr. Darmstadter's interests, and as necessary, liquidate assets to satisfy Mr. Darmstadter's restitution debt.

In opposition, Mr. Darmstadter argues that his obligation to pay restitution was ordered solely as a condition of supervised release, and since his supervised release has expired, so too has the restitution lien against him. Furthermore, even if the Government's purported restitution lien is valid, Mr. Darmstadter argues that it has not been perfected and is therefore inferior to a

---

[1] Despite the parties' briefing, it is not at all clear that the invocation of the Fifth Amendment by Mr. Darmstadter was proper, much less how Mr. Darmstadter could properly invoke the Fifth Amendment on behalf of any companies; "a corporation has no Fifth Amendment privilege." *Braswell v. United States*, 487 U.S. 99, 105 (1988). Nevertheless, the propriety of any assertion of privilege made by Mr. Darmstadter or any corporation is not before the Court.

federal tax lien for which the Internal Revenue Service issued notice in March 2021. (Due to this tax lien, Mr. Darmstadter has entered into an installment agreement with the Internal Revenue Service to pay the same debt the Government now seeks to satisfy through a writ of execution.) Mr. Darmstadter also contends that per the judgment order entered in this case, his restitution payment schedule is limited to ten percent of his monthly income; therefore, appointing a receiver to liquidate assets is unwarranted.

## APPLICATION FOR WRIT OF EXECUTION

The threshold dispute between the parties is whether restitution was ordered solely as a condition of supervised release, as Mr. Darmstadter asserts, or whether restitution was ordered pursuant to the agreed restitution provisions of Mr. Darmstadter's plea agreement, as the government maintains. Before turning to that dispute, however, an ancillary argument implicating procedure warrants discussion.

A writ of execution is one of multiple post-judgment remedies provided by the Federal Debt Collection Procedures Act of 1990 (FDCPA) that the Government may seek to enforce a judgment. *See* 28 U.S.C. §§ 3203–06; *see also* 18 U.S.C. § 3613(f) (incorporating civil remedies for enforcement of orders of restitution). Once issued, a judgment creates a lien in favor of the United States on "[a]ll property in which the judgment debtor has a substantial nonexempt interest . . . ." 28 U.S.C. § 3203(a)–(b). A defendant, having previously been afforded the full scope of due process, up to and including a trial resulting in a judgment against him, is thereafter limited in the ways he may oppose post-judgment remedies. Section 3202(d) enumerates an exclusive list of objections available.

Here, the Government argues that all of Mr. Darmstadter's objections are absent from, and consequently foreclosed by, section 3202(d). But by its own terms, section 3202(d)'s restriction only applies to motions "to quash [an] order granting [a post-judgment] remedy." The post-judgment remedy the Government now applies for has not yet been ordered, and therefore Mr. Darmstadter's opposition to this application—based on objections to the validity of his judgment—is not restricted by section 3202(d).

## CLARIFICATION OF RESTITUTION ORDER

Federal courts may order restitution only when explicitly authorized by statute. *United States v. Kieffer*, 794 F.3d 850, 853 (7th Cir. 2015). One grant of authority is 18 U.S.C. § 3556, which directs sentencing judges to order restitution in accordance with sections 3663 and 3663A of Title 18. Section 3663A (the Mandatory Victims Restitution Act of 1996) governs mandatory restitution and requires courts to order restitution for certain offenses, none of which are relevant here. Section 3663 (the Victim and Witness Protection Act of 1982) governs discretionary restitution but generally authorizes it only for offenses under Title 18 (the general criminal code) and certain offenses under Title 21 and Title 49. Thus, for offenses under Title 26 (the tax code), there is no general authority to order restitution. *United States v. Hassebrock*, 663 F.3d 906, 923 (7th Cir. 2011). Two exceptions exist.

The first exception is contained in section 3663(a)(3), which says that "court[s] may . . . order restitution in any criminal case to the extent agreed to by the parties in a plea agreement."

The second is contained in section 3583(d), which says that "court[s] may order, as a . . . condition of supervised release . . . any condition set forth as a discretionary condition of probation in section 3563(b) . . . ." In turn, the list of discretionary conditions set forth in section 3563(b) includes restitution. 18 U.S.C. § 3563(b)(2).

Thus, for a criminal defendant who has been convicted solely under Title 26—like Mr. Darmstadter—courts may only order restitution if a plea agreement provides for restitution and/or if restitution is made a condition of supervised release. The only qualitative difference between these two statutory exceptions is timing. It is axiomatic that courts may only enforce conditions of supervised release during a term of supervised release. *See Hassebrock*, 663 F.3d at 924 (If "a district court . . . impose[s] restitution as a condition of supervised release, a defendant cannot be required to pay restitution until his period of supervised release begins."); *United States v. Westbrooks*, 858 F.3d 317, 328–29 (5th Cir. 2017) (modifying restitution order issued under section 3583(d) because it required defendant to pay restitution prior to completing prison sentence). For this reason, restitution that is ordered due immediately is normally inconsistent with it being a condition of supervised release. *Westbrooks*, 858 F.3d at 328. A restitution order issued pursuant to a plea agreement, however, is not similarly delimited. Unless specified otherwise within the plea agreement, a court may order a defendant to pay restitution immediately upon sentencing, on a date certain, in installments, or via a schedule of payments set by the court. 18 U.S.C. § 3572(d). The criminal code establishes immediate payment of restitution as the default method of payment, barring some other method specified by a court. *Id.*; *United States v. Wykoff*, 839 F.3d 581, 582 (7th Cir. 2016).

It should be noted that the two statutory exceptions allowing restitution in tax cases (sections 3663(a)(3) and 3583(d)) are not mutually exclusive. Pursuant to a plea agreement, for instance, a court may order that restitution be paid immediately or throughout a term of imprisonment and—recognizing that a defendant may remain non-compliant or incapable of full payment prior to release from prison—also order payments be made as a condition of supervised release. *See, e.g.*, *United States v. Fariduddin*, 469 F.3d 1111, 1113 (7th Cir. 2006).

Here, Mr. Darmstadter's written judgment does not cite either section 3663 or section 3583 to specify which statutory exception authorizes his restitution order. Mr. Darmstadter contends his sentencing judge ordered restitution solely as a condition of supervised release. He primarily relies on the written judgment to reach this conclusion. Under a section titled *Additional Supervised Release Terms*, the written judgment reads:

> The defendant shall pay any financial penalty that is imposed by this judgment, and that remains unpaid at the commencement of the term of supervised release. The defendant's monthly payments towards any unpaid financial obligations imposed by this judgment shall be equal to ten percent of his net monthly income.

Am. J. 7, ECF No. 92. The following section, titled *Criminal Monetary Penalties*, lists a total restitution requirement of $2,365,594.00. *Id.* at 8. It also includes a series of preprinted provisos which may be incorporated into the judgment by checking associated checkboxes. One of these, left unchecked by Mr. Darmstadter's sentencing judge, reads:

3

☐ Restitution amount ordered pursuant to plea agreement $ _____

*Id*. The fillable entry field, as depicted above, is also left blank.

Because the written judgment expressly orders restitution as a condition of supervised release and does not associate any amount of his restitution with his plea agreement, Mr. Darmstadter maintains that the written judgment orders restitution ***solely*** as a condition of supervised release. Because Mr. Darmstadter's term of supervised released ended in 2015, a logical corollary of this reading is that he is no longer required to pay restitution.

The Government counters that Mr. Darmstadter's restitution was ordered pursuant to his plea agreement and therefore his obligation to pay restitution did not cease upon termination of his supervised release. The necessary argument the Government must make to support this position is that the written judgment's omission of a checkmark for the preprinted proviso depicted above (which, unless checked, does not associate any amount of Mr. Darmstadter's restitution order with his plea agreement) and the omission of any amount entered into the proviso's entry field constitute oversights—*i.e.,* clerical errors—that can be corrected pursuant to Rule 36. For support, the Government points to the fact that the stipulated restitution contained within Mr. Darmstadter's plea agreement mirrors the restitution the sentencing judge ultimately ordered, as well as the fact that the sentencing judge did not expressly disavow any portion of the parties' plea agreement when he announced Mr. Darmstadter's sentence.[2] The Government also claims other inconsistencies exist within the written judgment and support the notion that the written judgment is generally flawed.

For instance, the *Criminal Monetary Penalties* section contains a table listing the Internal Revenue Service as the sole payee of the entire restitution order. *Id.* at 8. The Government says the judgment as written renders the table meaningless because a preceding, preprinted proviso is not checked and necessarily must be checked in order for the table to take effect. That proviso reads:

> ☐ The defendant must make restitution (including community restitution) to the following payees in the amount listed [in the table] below.

*Id*. The Government also argues that the written judgment's schedule of payments, reflected in two sections, is inconsistent with the oral pronouncement of Mr. Darmstadter's sentence. In a section titled *Schedule of Payments*, the judgment reads:

---

[2] *See* Plea Agreement ¶ 14, ECF No. 62 ("Regarding restitution, defendant agrees pursuant to Title 18, United States Code, Section 3663(a), to pay restitution to the IRS in the amount of the tax loss, and defendant agrees that the total amount of restitution owed to the IRS is approximately $2,365,594, to be reduced by approximately $489,000, that is, those amounts previously paid by defendant to the IRS in connection with his tax liability or collected by the IRS and credited to defendant's tax liability prior to sentencing. Defendant further understands that this criminal restitution shall be due immediately, and paid pursuant to a schedule to be set by the Court at sentencing.").

> Special instructions regarding the payment of criminal monetary penalties: . . . The Restitution amount of $2,365,594.00 to be paid by the defendant *at 10%* of his net monthly income.

*Id.* at 3 (emphasis added). Further, and as noted above, the *Additional Supervised Release Terms* section also specifies that the "defendant's monthly payments . . . shall be **equal to ten percent** of his net monthly income." *Id.* at 7 (emphasis added). The Government points out that at the sentencing hearing, however, that the judge stated a different schedule of payments, one that required Mr. Darmstadter to pay monthly payments "at the rate of **at least** 10 percent of [his] net monthly income." Sentencing Hr'g Tr. 77:1-2, ECF No. 140-1 (emphasis added).

The Government characterizes all of these inconsistencies—including the omission of the checkmark otherwise necessary to associate Mr. Darmstadter's restitution with his plea agreement—as clerical errors that may be corrected under Federal Rule of Criminal Procedure 36. The Government moves accordingly to do just that.

Per Rule 36, a "court may at any time correct a clerical error in a judgment, order, or other part of the record, or correct an error in the record arising from oversight or omission." By comparison, a mistake in a criminal sentence resulting from "arithmetical, technical, or other clear error" is not clerical and may not be corrected beyond fourteen days after sentencing. Fed. R. Crim. P. 35(a); *see United States v. McHugh*, 528 F.3d 538, 540 (7th Cir. 2008) (holding court inappropriately invoked Rule 36 to correct a mistake governed by Rule 35(a)). A clerical error is "a gaffe in transcribing or putting a judicial decision on the docket . . . ." *United States v. Newman*, 794 F.3d 784, 786 (7th Cir. 2015). As such, any "inconsistency between an oral pronouncement and the written sentence is a clerical error within the scope of Rule 36." *United States v. McClain*, 16 F.4th 487, 490 (7th Cir. 2021). If an inconsistency is found, "the sentence pronounced from the bench controls." *United States v. Becker*, 36 F.3d 708, 710 (7th Cir. 1994). If the oral pronouncement is unambiguous, "a conflicting written judgment is 'a nullity, not requiring further discussion.'" *United States v. Medina-Mora*, 796 F.3d 698, 700 (7th Cir. 2015) (quoting *United States v. Alburay*, 415 F.3d 782, 788 (7th Cir. 2005)). On the other hand, "if the oral pronouncement is ambiguous, the court may consider the entire record, including the written judgment, to resolve the ambiguity." *Id.*

Accordingly, a review of the oral pronouncement of Mr. Darmstadter's sentence is necessary to resolve any supposed inconsistencies between it and Mr. Darmstadter's written judgment. How the sentencing judge sequenced his oral pronouncement has some bearing on its meaning, so this review will proceed chronologically through the announcement of the sentence. The oral pronouncement, in its entirety, spans nine transcribed paragraphs.

The sentencing judge first announced a sixty-month term of imprisonment. Sentencing Hr'g Tr. 75:1-6, ECF No. 140-1. He then imposed a special assessment.[3] The judge then turned to restitution, stating in full:

---

[3] Correcting the amount specially assessed, in addition to adding a recommendation to the Bureau of Prisons, are the two reasons the original written judgment was amended. *Compare* Am. J. 2–3, ECF No. 92, *with id.* at 5, 9. The amendment occurred on the Court's own motion,

5

> Restitution in the amount of $2,365,594 less any funds repaid prior to sentencing is outstanding and shall be ordered paid to the Internal Revenue Service. It is ordered that interest on the restitution be waived. The defendant shall be assessed the costs of prosecution.

*Id.* at 75:11-13.

After ordering restitution, the judge moved on to address supervised release. The judge first imposed the term of supervision:

> Upon release from imprisonment, the defendant shall be placed on supervised release for a term of two years.

*Id.* at 75:16-17. The remainder of the oral pronouncement then addressed conditions of supervised release. In relevant part, the sentencing judge stated:

> While on supervised release, the defendant . . . shall comply with the following additional conditions: . . . The balance of any financial obligation upon release from custody shall be paid in monthly payments during supervised release at the rate of at least 10 percent of the defendant's net monthly income.

*Id.* at 75:23–76:1, 76:24–77:2.

Reviewing the oral pronouncement against the backdrop of governing law, this Court finds no ambiguity. In ordering restitution, the sentencing judge plainly stated the amount due without further conditions or qualification (save for waiving interest): the Court ordered Mr. Darmstadter to pay restitution in the amount of $2,365,594. It is true that much was left unsaid. Particularly, the sentencing judge did not expressly state under what authority he was ordering restitution or the method for how it is to be paid. But the sentencing judge's silence on that question evinces neither ignorance of the law nor ambiguity. Because the sentencing judge did not state a payment schedule, by default the restitution was to be paid immediately. 18 U.S.C. § 3572(d) ("A person sentenced to pay … restitution[] shall make such payment immediately, unless … the court provides for payment on a date certain or in installments.").

This tells us that the sentencing judge necessarily relied on section 3663(a)(3) in ordering restitution. Mr. Darmstadter was sentenced to prison; his supervised release did not begin immediately. The sentencing judge could not have relied exclusively on section 3583(d) to order restitution payable immediately ***and*** solely as a condition of supervised release. There was only one other authority for which restitution could have been ordered in this case: 18 U.S.C. § 3663(a)(3) (pursuant to a plea agreement). Hence, the sentencing judge's failure cite section 3663(a)(3) or reference the parties' plea agreement are omissions without import.

---

under Rule 36, about a month and a half after the original written judgment issued. The fact that the judgment was previously amended has no bearing on the present issues.

The sentencing judge did specify a method of payment other than immediate payment later in his oral pronouncement ("at the rate of at least 10 percent of the defendant's net monthly income"). But he stated this requirement in conjunction with listing the conditions of Mr. Darmstadter's supervised release and that statement plainly sets out nothing more than the minimum payment Mr. Darmstadter was required to make while on supervised release—if the full restitution obligation had not already been satisfied. The order requiring minimum payments during supervised release does not contradict an overall order requiring payment due immediately. *See United States v. Fariduddin*, 469 F.3d 1111, 1113 (7th Cir. 2006) ("The debt is payable in full now, as [the defendant] agreed. Recognizing that [the defendant] might not pay, the district judge set a ***minimum*** installment as a condition of supervised release."); *see also* 18 U.S.C. § 3664(f)(3)(B) ("A restitution order may direct the defendant to make nominal periodic payments if . . . the economic circumstances of the defendant do not allow the payment of any amount of a restitution order, and do not allow for the payment of the full amount of a restitution order in the foreseeable future under any reasonable schedule of payments."). And notably, the sentencing judge did not say that any remaining balance at the end of the term of supervised release would be extinguished; he simply required monthly minimum payments on the outstanding balance during the term of supervised release.

In addition, the sequence of the pronouncement conforms with an intent to order restitution in full while imposing a specific payment schedule only during the term of supervised release. For instance, only after the sentencing judge announced the unqualified order of restitution did he order a term of supervised release and state the conditions of supervision. But if restitution was to be paid solely as a condition of supervised release, it would be an odd choice for the sentencing judge to proclaim an unqualified order of restitution before any discussion of supervised release and—more importantly—well before he begins describing the conditions of that release. The most natural sequence to affect restitution ordered solely as a condition of supervised release would have been to order restitution only after beginning to set forth the conditions of supervised release.

Additional portions of the oral pronouncement also support this reading. While describing the conditions of supervised release, the sentencing judge dictated that the "***balance*** of any financial obligation ***upon release from custody*** shall be paid in monthly payments during supervised release . . . ." Sentencing Hr'g Tr. 76:24–77:2, ECF No. 140-1 (emphasis added). The reference to "balance" remaining at the termination of imprisonment connotes an expectation that some amount of restitution would be paid during Mr. Darmstadter's prison sentence,[4] an expectation that the plea agreement confirms. And, to reiterate, a defendant cannot be ordered to pay restitution as a condition of supervised release while in prison. Hence, section 3583 could not have been the only authority relied upon by Mr. Darmstadter's sentencing judge in ordering restitution. The only other authority available was section 3663, allowing restitution imposed pursuant to a plea agreement.

---

[4] *See Balance*, Merriam-Webster Online Dictionary (2023 Merriam Webster, Inc.), https://www.merriam-webster.com/dictionary/balance (last visited Apr. 4, 2023) (definition 4(c): "something left over, remainder").

7

This Court therefore concludes that Mr. Darmstadter's sentencing judge ordered restitution pursuant to the plea agreement, payable immediately, but also ordered payments—at a rate of at least ten percent of Mr. Darmstadter's net monthly income—on any balance remaining upon release from custody as a condition of supervised release.

The oral pronouncement of Mr. Darmstadter's sentence is unambiguous and thus its interpretation requires no extrinsic evidence. Nonetheless, it bears noting that the record, including the written judgment, reinforces the above finding. Most noteworthy is the parties' plea agreement, which conveys an intent by the parties to have Mr. Darmstadter's restitution "be due immediately, and paid pursuant to a schedule to be set by the Court at sentencing." Plea Agreement ¶ 14, ECF No. 62. Mr. Darmstadter points to no (convincing) evidence that his sentencing judge rejected any portion of the parties' agreement. The sentencing judge did not, to be sure, order restitution payable immediately—which, he says, evinces an intent to not accept the parties' agreement in whole. But as discussed, the sentencing judge did not need to expressly order restitution payable immediately given that the criminal code establishes immediate payment as the default rule.

The written judgment, despite its inconsistencies with the oral pronouncement, also reinforces this Court's understanding of the oral pronouncement. The previously quoted excerpt from the *Additional Supervised Release Terms* section refers to restitution "that ***remains unpaid*** at the commencement of [Mr. Darmstadter's] term of supervised release." Am. J. 7, ECF No. 92 (emphasis added). The reference to amounts "unpaid" at the commencement of supervised release—like the oral recognition of any "balance" remaining upon release from custody—suggests that some of Mr. Darmstadter's restitution was expected to be paid prior to his term of supervised release; and consequently, supports the notion that section 3583 could not have been the only statutory authority relied upon in ordering restitution.

Additionally, the written judgment's *Schedule of Payments* section contains a preprinted proviso that neither party has addressed. It, too, supports the notion that restitution was not ordered solely as a condition of supervised release:

> Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due ***during the period of imprisonment***.

Am. J. 3, ECF No. 92 (emphasis added). Although the written judgment (when read consistent with the oral pronouncement) does order minimum payments during supervised release, that condition is not an express disclaimer of the above proviso's instruction that restitution is otherwise "due during the period of imprisonment." *See id.* ("The Restitution amount of $2,365,594.00 to be paid by the defendant at [the rate of at least] 10% of his net monthly income.").

Based on the foregoing, the Government's motion under Rule 36 to correct clerical errors in Mr. Darmstadter's judgment is granted. An amended judgment shall issue consistent with this opinion. Mr. Darmstadter's objections to the Government's application for writ of execution, based on the theory that his restitution obligation expired upon termination of his supervised

release or that any surviving obligation is limited to ten percent of his monthly income, are overruled.

## PRIORITY OF RESTITUTION LIEN

Enforceable orders of restitution give rise to restitution liens in favor of the United States. 18 U.S.C. § 3613(c). Mr. Darmstadter argues the Government is precluded from collecting on any surviving restitution lien because it is subordinate to a federal tax lien perfected by the Internal Revenue Service in 2021.

"Liens resulting from restitution judgments are treated like federal tax liens." *United States v. Henricks*, 886 F.3d 618, 625 (7th Cir. 2018). A federal tax lien attaches at the time a tax assessment is made to all property and rights to property of the defendant. 26 U.S.C. §§ 6321–22. In like manner, a restitution lien attaches upon order of restitution to all property and rights to property of the defendant. 18 U.S.C. § 3613(c); *United States v. Kollintzas*, 501 F.3d 796, 802 (7th Cir. 2007). Here, Mr. Darmstadter's restitution lien attached to his property interests on March 3, 2010—the date of his original judgment. Am. J. 1, ECF No. 92. And based on undisputed evidence Mr. Darmstadter filed in opposition to the Government's application for writ of execution, a federal tax lien also attached on various dates corresponding to tax assessments issued between 1999 and 2013. Ex. D to Def.'s Opp'n 1, ECF No. 128-1 (Notice of Federal Tax Lien).

Establishing the priority of a federal tax (or restitution) lien, however, is not a matter of determining the date the lien was created and attached to the relevant property, but rather by the date that notice of the lien was filed in the appropriate jurisdiction (generally the state(s) in which the property is located). *See* 26 U.S.C. § 6323(a) and (f)). As the Supreme Court has explained:

> Federal tax liens do not automatically have priority over all other liens. Absent provision to the contrary, priority for purposes of federal law is governed by the common-law principle that "the first in time is the first in right." *United States v. New Britain,* 347 U.S. 81, 85, 74 S. Ct. 367, 370, 98 L. Ed. 520 (1954); cf. *Rankin v. Scott,* 12 Wheat. 177, 179, 6 L. Ed. 592 (1827) (Marshall, C.J.). ***For purposes of applying that doctrine . . . [a] federal lien shall "not be valid ... until notice thereof . . . has been filed.***"

*United States v. McDermott*, 507 U.S. 447, 449 (1993) (emphasis added). That means that a federal lien must be deemed to have commenced "no sooner than the filing of notice." *Id*. *See also United States v. Miller*, 39 F.4th 844, 846 (7th Cir. 2022) (citing 18 U.S.C. § 3613(d) and 26 U.S.C. § 6323(f)) (a restitution lien "is perfected . . . when the government files a notice of the lien with an appropriate public office, such as the county clerk or recorder").

That is a big problem for the government's efforts to secure a writ of execution on its restitution lien because, so far as the record reflects, the government has never filed notice of its restitution lien, anywhere. *Compare, e.g., Miller,* 39 F.4th at 846 (noting that government "filed a lien on the property to enforce the restitution judgment"); *Henricks*, 886 F.3d at 620 n.1 (finding government perfected restitution lien by filing notice with county clerks a month after

9

restitution order issued). The IRS, on the other hand, perfected its tax lien on March 26, 2021, by filing notice of the tax lien with the Onondaga County Clerk in Syracuse, New York. *Id*.

The Government barely musters any response to Mr. Darmstadter's argument that the tax lien has priority. It does not dispute the validity of the tax lien or that proper notice of the lien was filed. Rather, it offers but a single, conclusory proposition that "[t]he IRS's lien is plainly not ahead of, or in competition with, the restitution judgment lien[] . . . [because the] lien created by the restitution judgment went into effect on March 3, 2010." Reply 1–2, ECF No. 136. That claim—that the restitution lien "went into effect" on the date of the judgment—cannot be squared with *McDermott*'s teaching that a federal lien does not commence until notice of the lien has been filed. It simply ignores the distinction between the creation and attachment of a restitution lien and its perfection.[5]

This Court is therefore bound to conclude that Mr. Darmstadter's federal tax lien is effective, his restitution lien is not, and hence the tax lien has a priority claim over Mr. Darmstadter's property interests. *Cf., e.g., United States v. De Cespedes*, 603 F. App'x 769, 771 (11th Cir. 2015) (finding restitution lien perfected earlier than, and thus had priority over, federal tax lien). For this reason, no writ of execution may presently issue.[6]

\* \* \*

The Government's understanding of Mr. Darmstadter's restitution order is correct: it was issued pursuant to his plea agreement and not solely as a condition of supervised release. Accordingly, Mr. Darmstadter's restitution obligation—and its corresponding restitution lien—survives the termination of his supervised release, and an amended judgment shall issue to correct the clerical mistakes identified by the Government. The Government has not, however, rebutted Mr. Darmstadter's contention that the restitution lien created by that judgment is subordinate to the Internal Revenue Service's perfected federal tax lien. The Government's application for writ of execution is therefore denied.

---

[5] The government fails even to acknowledge that the text of 18 U.S.C. § 3613(d), on which it relies, expressly conditions the validity of a restitution lien on "***the filing of a notice of lien in the manner in which a notice of tax lien would be filed***." And while it acknowledges in its brief that its citation to 18 U.S.C. §3201 was inapt because that statute's application is limited to liens against real property and the writ of execution seeks only personal property, the government misses the bigger problem with its citation to § 3201. That statute provides that a civil judgment creates a lien on all real property of a judgment debtor "***on filing a certified copy of the … judgment in the manner in which a notice of tax lien would be filed.***" Notice of filing is thus required by 18 U.S.C. § 3201 to make a lien effective just as it is under 18 U.S.C. § 3613(d) and 26 U.S.C. § 6323.

[6] This ruling does not necessarily foreclose the Government from seeking another writ of execution in the event that the IRS were to agree to subordinate its lien to the restitution lien. This ruling takes no position as to that possibility and is not intended to preclude the Government from renewing a motion for writ of execution on the restitution lien should that lien obtain priority over the tax lien.

Date: 7/6/23

<u>/s/ John J. Tharp, Jr.</u>
John J. Tharp, Jr.
United States District Judge